# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **OKECHUKWU AMADI,** ) | |
| ) | |
| Petitioner ) | |
| ) | |
| v. ) | Case No. 4:04-cv-01080-RDP-HGD |
| ) | |
| **JOHN ASHCROFT, et al.,** ) | |
| ) | |
| Respondents ) | |

## MEMORANDUM OPINION

Okechukwu Amadi ("Petitioner" or "Amadi") has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. He challenges the validity of his continued detention pending deportation and seeks release under an order of supervision. Also before the court is Petitioner's Motion for Release From Custody Pending Final Adjudication by the Immigration Court. (Doc. #23).

### FACTUAL AND PROCEDURAL BACKGROUND

On February 22, 1995, Amadi was found guilty by a jury of conspiring to import more than one kilogram of heroin into the United States in violation of 21 U.S.C. §§ 952(a), 960(a)(1) and 963. (*See* Doc. #31, Petitioner's Reply, at Ex. 2). He entered into an agreement to provide substantial assistance to the government, and

the government subsequently applied for a downward departure in Amadi's sentence, from a range of 151 to 188 months to a sentence of 84 months.  (*Id.*).

After his release from custody on the criminal sentence, Amadi was taken into the custody of immigration officials on December 8, 2000, and an immigration judge ordered his removal on January 5, 2001, based on his felony drug conviction. (Doc. #1, Habeas Corpus Petition; Doc. #8, Respondent's Partial Response to Order to Show Cause).  Amadi appealed the decision of the immigration judge to the Board of Immigration Appeals (BIA).  The BIA affirmed the immigration judge's decision on September 13, 2001.

Amadi then filed a petition for writ of habeas corpus in the United States District Court for the Eastern District of New York challenging his removal.  Amadi asserted that his removal to Nigeria should be deferred pursuant to the United Nations' Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT), 1465 U.N.T.S. 85, G.A. Res. 39/46, 39th Session, U.N. GAOR Supp. No. 51 at 197, U.N. Doc. A/39/51 (1984).  Petitioner's challenge in the Eastern District of New York was based on his contention that if he returned to Nigeria, it was more likely than not that he would be tortured due to his drug trafficking conviction.  His petition was denied on July 3, 2003, and the stay of removal which had been granted was lifted.  Amadi then appealed the denial of

habeas relief to the Second Circuit. That court stayed Amadi's removal by order entered June 7, 2004, pending a decision on the appeal. (Doc. #8, Respondent's Partial Response to Order to Show Cause, at Ex. A).

In his appeal to the Second Circuit, Amadi challenged the district court's denial of habeas relief and argued that the BIA's decision was based on an erroneous determination that "Decree 33," which would subject him to torture based on his drug trafficking conviction, had been repealed in Nigeria, when such is not the case. The parties agreed that the BIA's 2001 ruling should be vacated and the case remanded to the BIA for a new decision regarding petitioner's application for CAT protection after further development of the record. Therefore, on April 27, 2005, Petitioner's case was remanded by the Second Circuit to the BIA. (*See* Doc. #31, Petitioner's Reply, at Ex. J).

On July 20, 2005, the BIA issued an order, sending the matter back to the immigration judge. That order provides in part as follows:

> The respondent has submitted evidence that he argues shows that he is at risk of torture in Nigeria as a result of his conviction for drug trafficking here in the United States. *See* Respondent's Brief at 8-12. He also argues that due to his cooperation with law enforcement authorities in this country, he is at risk of torture from drug traffickers recently deported to Nigeria who would be angered at his cooperation against their drug operation. *Id.* at 4-7. The DHS appears to argue that because Decree 33 represents "lawful sanctions" against certain Nigerian

3

>citizens, the respondent would be unable to articulate a claim for relief under the Convention Against Torture on that basis. *See* DHS Brief at 2. The DHS does not address the respondent's claim that he will be tortured as a result of his cooperation with law enforcement officials. Given the passage of time since the original hearing below and the necessity to develop a factual record regarding such issues as the current enforcement (or lack thereof) of Decree 33 and whether the respondent has presented sufficient reliable facts to satisfy his burden of proving eligibility for relief under the Convention Against Torture, we find that a remand of this matter is required. *See* 8 C.F.R. § 1003.1. Accordingly, the record is remanded.

(Doc. #23, Petitioner's Status Report and Motion for Release From Custody Pending Final Adjudication by the Immigration Court, at Attachment; Doc. #31, Petitioner's Reply, at Ex. G).

The hearing before the Immigration Judge took place on October 7, 2005. (Doc. #27, Respondent's Status Report). The immigration judge again ordered Amadi removed to either England or Nigeria. (*See* Doc. #31, Petitioner's Reply, at 4 and Ex. H). Amadi appealed the decision to the BIA on October 14, 2005. (*Id.* at Ex. K). There is no evidence that the order of removal, issued on October 7, 2005, has been stayed. In his reply (Doc. #31), Amadi admits that he is in the process of exhausting his administrative remedies on his claim under CAT and estimates this could take up to four years more.

4

During the pendency of his immigration appeals, Amadi filed a complaint on June 7, 2004, against FCI Fort Dix Health Services and other defendants, alleging tort claims related to treatment of his eyes. *Amadi v. FCI Fort Dix Health Servs., et al.*, Case No. 1:04-cv-02712-RBK-AMD (D.N.J.). That action is still pending. (*See* Doc. #31, Petitioner's Reply, at Ex. B).

The declaration of Dean Hoth submitted by Respondents describes the efforts to obtain travel documents for Petitioner from the Nigerian consulate, beginning in March 2001. (Doc. #20, Attachment 1). An Emergency Travel Certificate finally was issued by the Nigerian consulate on May 19, 2004; however, it expired after one week. (*Id.* at Ex. S). Mr. Hoth states that in his experience, the Nigerian consulate will not issue a travel document while any court cases are pending for an alien under an order of deportation. That assertion is corroborated by a copy of a letter from the Consulate General of Nigeria dated August 13, 2004, which states, "I am to remind you of the position of this Consulate not to issue travel document on your behalf until you receive the appropriate treatment for the eye." (Doc. #31, Petitioner's Reply, at Ex. A).

Amadi claims that he is due to be released on an order of supervision because his removal is not likely to occur in the near future due to the failure of the Nigerian consulate to issue travel documents for his removal. In their partial response to the

habeas corpus petition in this case (Doc. #8), Respondents asserted that Amadi's challenge to his detention pending deportation is premature because the Second Circuit stayed Amadi's deportation; therefore, they assert the ninety-day statutory time for removal set out in 8 U.S.C. § 1231(a) had not commenced. Respondents also rely on § 1231(a)(1)(C) and argue that the removal period must be extended beyond ninety days whenever the alien acts to prevent his removal. In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court recognized six months as a presumptively reasonable period of time for the government to accomplish an alien's removal once the removal time has commenced. Respondents assert that Amadi's removal period had not yet commenced.

In an order entered September 8, 2005, the court directed the parties' attention to existing reports from the Office of Inspector General identifying Nigeria as a country that is "uncooperative in the timely issuance of travel documents," resulting in delays in deportation. *See* Immigration and Naturalization Service Institutional Removal Program, DOJ Office of Inspector General Audit Report No. 02-41 (September 2002), *available at* http://www.usdoj.gov/oig/reports/INS/a0241/findings2.htm, and The Immigration and Naturalization Service's Removal of Aliens Issued Final Orders, Evaluation and Inspections Report I-2003-004 (February 2003), *available at* http://www.usdoj.gov/oig/reports/INS/e0304/index.htm. It also noted

that the record in this case shows that efforts to deport Amadi have been hampered by delays in obtaining travel documents for him from the Nigerian consulate. Given the reports and the record in this case, Respondents were instructed to address (1) whether Amadi had made an initial showing of good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, even after the stay on removal was lifted, and (2) if such a showing had been made, whether Respondents could rebut it or whether Amadi was otherwise entitled to relief.

In their response (Doc. #26), Respondents asserted that Amadi has not made an initial showing of entitlement to relief under *Zadvydas*. They state that Nigeria previously issued a travel document for Amadi in May 2004 and Amadi would have been deported at that time but for the stay of deportation he obtained. Respondents also assert that, notwithstanding that there may be some difficulty in obtaining travel documents for other Nigerians, they have not experienced any such problems with obtaining travel documents for Petitioner (other than those presented by virtue of Petitioner's pending legal and administrative claims), and there is no reason to believe travel documents will not be issued for Petitioner once his court and administrative proceedings have been concluded. Respondents further contend that the six-month period under *Zadvydas* will not begin to run until Amadi's immigration proceedings are completed. In addition, Respondents assert that Amadi has acted to

prevent his removal, within the meaning of 8 U.S.C. § 1231(a)(1)(C), because he initiated civil litigation after the travel documents were issued for him, knowing that Nigeria has a rule of law, policy, practice, or custom that causes that country to decline to issue travel documents for its citizens if they have litigation pending in this country.

## DISCUSSION

With respect to detention, release, and removal of aliens ordered removed, 8 U.S.C. § 1231(a) gives the Attorney General a ninety-day period to accomplish the removal of an alien following the entry of a final order of deportation. Section 1231(a)(1)(B) provides:

> The removal period begins on the latest of the following:
> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

Section 1231(a)(1)(C) provides that

> The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

The Supreme Court held in *Zadvydas* that § 1231(a) authorizes detention for a period reasonably necessary to accomplish the alien's removal. *Zadvydas*, 533 U.S. The Court found that six months is a presumptively reasonable period of time to allow the government to remove an alien after the removal period has commenced. *Id.* at 701.  The Supreme Court further stated that:

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing.  And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink.  This 6-month presumption, of course, does not mean that every alien not removed must be released after six months.  To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.*

Since *Zadvydas*, at least two circuit courts have considered challenges by Nigerian nationals to their continued detention.  In *Akinwale v. Ashcroft*, 287 F.3d 1050 (11th Cir. 2002), a resident alien who had been ordered deported to his home country of Nigeria alleged that his indefinite detention violated *Zadvydas*.  Akinwale was taken into custody by the Immigration and Naturalization Service, and he filed a § 2241 habeas corpus petition four months later.  The trial court found that

9

Akinwale did not present any factual allegations indicating indefinite detention pending removal. The appellate court agreed, stating that at least six months must elapse between an alien's entry into INS custody and the filing of a habeas corpus petition alleging a *Zadvydas* violation:

> in order to state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.* at 1052. Further, it found that Akinwale had not presented any facts indicating that the INS was incapable of executing his removal to Nigeria, resulting in an indefinite detention. The Eleventh Circuit also noted that after he was taken into INS custody, Akinwale interrupted the running of time under *Zadvydas* by seeking and obtaining a stay of deportation; therefore, he did not have even one unencumbered month of detention, let alone six. *Id*. at 1052 n.4. The court relied on § 1231(a)(1)(C), which again states that the "removal period shall be extended . . .if the alien . . . acts to prevent the alien's removal subject to an order of removal." The court also noted Akinwale's choice to "simultaneously challenge issues related to his removal order and his post-removal period detention." *Akinwale*, 287 F.3d at 1052 n.4.

In *Obikanye v. Immigration and Naturalization Serv.*, 78 Fed.Appx. 769 (2d Cir. 2003), the court considered the § 2241 petition of a Nigerian national who was taken into custody after his arrival in the United States and who was denied asylum. Obikanye was taken into custody in September 2001 and obtained a stay of removal pending a final decision regarding his asylum petition. The district court held (pre-*Clark v. Martinez*[1]) that *Zadvydas* was not applicable to him because he never had been admitted, that he remained in custody due to the stay he received, and that he failed to demonstrate that the INS would be unable to remove him once the stay was lifted. The appellate court held that, even assuming the applicability of *Zadvydas* to Obikanye, he had still failed to demonstrate that there was no likelihood of his removal to Nigeria in the reasonably foreseeable future.

In this case, Petitioner obtained stays of his order of removal during his challenges to that order. He is in the process of exhausting his administrative remedies with respect to the most recent order of removal issued October 7, 2005. Therefore, under § 1231(a)(1)(B), the removal period has not begun because the order of removal is not final. *See Fahim v. Ashcroft*, 227 F.Supp.2d 1359 (N.D.Ga. 2002) (filing of petition for review of removal order tolls running of six-month presumptive removal period); *Bartholomeu v. District Director, Immigration & Naturalization*

---

[1] 543 U.S. 371 (2005).

*Svc.*, 487 F.Supp. 315, 319-20 (D.Md. 1980) ("where the alien seeks to avoid his deportation by resort to various judicial proceedings, the six month period . . . is extended and the alien cannot secure his release from custody when, due to his own actions, he has been detained pursuant to a deportation order that is more than six months old."). Even if the removal order is considered final as of October 7, 2005, the six-month presumptive detention period has not yet expired. Therefore, Amadi's petition is premature.

In addition to the fact that the removal order has not been final for a period of six months or more, there is an additional reason for denying the relief Amadi seeks in his petition: he also has failed to make an initial showing that there is no reasonable likelihood of his removal to Nigeria in the foreseeable future. First, Petitioner has not alleged institutional barriers to the repatriation of aliens to Nigeria. Nor could he in good faith. The United States has a repatriation agreement with Nigeria. This fact works toward distinguishing this case from *Zadvydas*, because there the Supreme Court considered the cases of two aliens and found that both demonstrated that there was no significant likelihood of removal in the reasonably foreseeable future, necessitating their release from custody. One alien was from Cambodia, a country with which the United States has no repatriation agreement. As a result, there was virtually no hope of repatriating that alien back to his native land.

*Zadvydas*, 533 U.S. at 686.  The other alien was born in a refugee camp in Germany in 1948 and was not a citizen of any country; therefore, no other nation would accept him, regardless of the substantiality of any efforts that the INS put forth.  *Id.* at 684.  Accordingly, the facts surrounding Petitioner's detention differ considerably from the facts the Supreme Court faced in *Zadvydas*.

Nor has Amadi made any showing that there are particular individual barriers to his repatriation to Nigeria.  Travel documents have been requested from Nigeria, and the Nigerian Consulate has confirmed that Amadi is a citizen of Nigeria.  In fact, travel documents were successfully obtained for Petitioner; it was his own action of bringing litigation that caused a stay of his deportation and prevented the government from using the travel documents issued to deport.  The lack of visible progress since the United States government requested subsequent travel documents from the Nigerian government does not in and of itself meet Petitioner's burden of showing that there is no significant likelihood of removal.  In addition, the mere fact that the Nigerian government has taken its time in responding to the request for travel documents does not mean that it will not do so in the future.  In short, Petitioner has not alleged facts indicating that Nigeria will not issue him papers, nor has he alleged any reason why Nigeria would not ultimately comply with a request from the United States government in this particular instance, after conclusion of Petitioner's pending

litigation in the United States District Court for the District of New Jersey and with respect to the order of removal.

The court concludes that Petitioner, in effect, seeks to place the burden on the government to show when it will remove Petitioner.  However, in *Zadvydas*, the Supreme Court held that it is petitioner's burden first to show good reason to believe that there is no significant likelihood of removal.  All Petitioner has shown is the passage of some time (during much of which Petitioner has had litigation pending that has prevented his removal).  Unlike the aliens in *Zadvydas*, for whom deportation seemed impossible no matter how long they waited, there is no reason to believe that Amadi will not ultimately be returned to Nigeria.  The mere fact that Nigeria is a country known to take its time in issuing travel documents does not in and of itself lead to a finding that good reason exists to believe that there is no significant likelihood of removal in the reasonably foreseeable future.

In the event that Petitioner is detained for a period longer than six months after his removal order becomes final and he no longer has other litigation pending, he may file a separate petition for habeas corpus relief in an attempt to demonstrate a *Zadvydas* violation.

Based on the foregoing, the habeas corpus petition will be denied without prejudice to Petitioner's right to refile under appropriate circumstances.  The motion

for release pending final adjudication also will be denied. A separate order in conformity with this Memorandum Opinion will be entered this same day.

**DONE** and **ORDERED** this ____2nd____ day of February, 2006.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE